UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

D'ARCY ACQUISITION, LLC,                          Case No:  13-12018-RBR
d/b/a D'ARCY LABORATORIES, LLC,

    Debtor.                                       Chapter 11

_____/

## EMERGENCY APPLICATION FOR APPROVAL OF EMPLOYMENT OF GLASSRATNER ADVISORY & CAPITAL GROUP, LLC AS EXCLUSIVE INVESTMENT BANK TO THE DEBTOR *NUNC PRO TUNC* TO MARCH 26, 2013

> **On April 2, 2013, the Court entered an order approving procedures to sell substantially all of the assets of the Debtor [ECF No. 70]. Pursuant to the order, the deadline for potential purchasers of the assets to conduct due diligence and submit a qualifying bid packet is April 12, 2013.**

> **To ensure the Debtor's assets are properly market tested and that the value of the estate is maximized, the Debtor seeks to authorize the retention of GlassRatner Advisory & Capital Group, LLC as its exclusive investment banker. In light of the April 12 deadline for interested parties to conduct due diligence, the Debtor respectfully requests that the instant application be scheduled for hearing on or before April 5, 2013.**

D'Arcy Acquisition, LLC d/b/a D'Arcy Laboratories, LLC (the "Debtor"), hereby files this *Emergency Application for Approval of Employment of GlassRatner Advisory & Capital Group, LLC as Exclusive Investment Banker to the Debtor Nunc Pro Tunc to March 26, 2013* (the "Application") and, in support thereof, respectfully states as follows:

### JURISDICTION

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 327 and 328.

## BACKGROUND

3.      On January 29, 2013, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor in possession.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this chapter 11 case.

5.      The Debtor is a limited liability company that specializes in the manufacture and sale or proprietary formulated personal care products.

6.      After negotiating with its creditors and reviewing the options available to it in this chapter 11 proceeding, the Debtor has determined that the sale of substantially all of its assets is the best method of maximizing the value of its estate.  On March 26, 2013, the Debtor therefore filed the *Expedited Motion for Entry of an Order (A) Authorizing and Scheduling the Sale of the Debtor's Assets Free and Clear of all Liens, Claims and Encumbrances; (B) Approving and Authorizing the Debtor to Enter into Asset Purchase Agreement; (C) Approving Bidding Procedures; (D) Approving Notice of Sale; (E) Scheduling an Auction to Accept Higher and Better Bids; and (F) Scheduling Hearing to Approve Sale Arising out of Auction* (the "Sale Motion") [ECF No. 65].  On April 2, 2013, the Court entered an order (the "Order") [ECF No. 70] approving the sale procedures set forth in the Sale Motion.

## RELIEF REQUESTED

7.      To ensure the Debtor's assets are properly market tested and that the value of the estate is maximized, the Debtor seeks to authorize the retention of James W. Fox and

GlassRatner Advisory & Capital Group, LLC (collectively, the "Firm") as the exclusive investment banker to the Debtor, *nunc pro tunc* to March 26, 2013, in order to manage a process that leads to the sale of substantially all of the Debtor's assets (the "Assets"). A copy of the proposed engagement agreement between the Debtor and Firm (the "Agreement") is attached hereto as EXHIBIT "A".

8.     The Firm is a national organization that provides merger, acquisition and bankruptcy advisory services to companies that are experiencing financial difficulty. The Firm's professionals have been retained as financial advisors in a number of troubled company situations and have years of experience involving, *inter alia*, transactions including asset sales and financings, both in a bankruptcy setting and out of court.

9.     The Debtor submits that it is necessary and essential to employ the Firm to locate and negotiate with potential purchasers of the Assets in order to maximize the value of same.

### SERVICES TO BE RENDERED AND PROFESSIONAL COMPENSATION

10.     The Firm has not received any advance fee or retainer for post-petition services.

11.     Subject to bankruptcy court approval of the Agreement, the Firm will assist and advise the Debtor with the following:

a.     Reviewing and developing initial marketing materials, to include an executive summary outlining the operational and financial highlights of the Debtor's business and assets and a form of Confidentiality Agreement ("CA") to be distributed to potential interested parties;

b.     Identifying and approaching potential interested parties;

c.     Coordinating negotiation and execution of CA's;

d.     Distributing the executive summary to potential interested parties that

execute a CA in a form and substance acceptable to the Debtor, the Debtor's counsel, and the Firm;

        e.      Introducing potential buyers to the Debtor and facilitating meetings and presentations;

        f.      Evaluating all indications of interest or proposals received from potential buyers;

        g.      Coordinating due diligence requests from potential buyers with the Debtor's staff; and

        h.      Assisting the Debtor and its counsel in consummating the asset sale transaction with the purchaser ultimately selected.

        12.      In connection with the professional services to be rendered to the Debtor, the Debtor shall pay the Firm upon the successful closing of a § 363 sale a fee (the "Transaction Fee") equal to four and one half percent (4.5%) of the sale price (the "Transaction Price"), subject to a minimum Transaction Fee of $45,000; provided, however, that (a) if the Debtor's post-petition lender, Oak Lane Partners, LLC ("OLP"), or any affiliates of OLP, close the sale, the Firm shall be limited to a transaction fee of $22,500.00; and (b) if third parties (i) Bentley Laboratories, LLC, (ii) Summit Private Capital Group, and/or (iii) any entities directly or indirectly controlled by Howard Sherman, close the sale, the transaction fee paid to the Firm shall be reduced by ten percent (10%) (collectively, the "Fee Arrangement").

        13.      The Transaction Fee shall be paid at closing, by certified check or wire transfer. For purposes of the Agreement, the Transaction Price shall be the aggregate consideration in connection with a Transaction, including without limitation the sum of the following:

        a.      Cash and cash equivalents paid by the purchaser; plus

b.       The market value of any common or preferred stock, or promissory notes issued by either the Debtor or the purchaser; plus

c.       The value of any notes or other evidence of indebtedness of the Debtor, which is issued, assumed and/or forgiven in connection with a transaction.

14.     If approved by this Court, the Agreement will remain in force for nine months from the date of the signing of the Agreement, after which it may be terminated immediately by either party, in its sole discretion, for any reason whatsoever.   Upon termination of the Agreement, the Firm shall be entitled to all unpaid expenses incurred pursuant to the Agreement. Within two weeks of any termination, the Firm shall provide the Debtor with a listing of all potential buyers with whom contact was made by the Firm and/or the Debtor during the term of the Agreement (the "Potential Buyers List.")  In the event the Debtor consummates a transaction within nine months of termination, with a party included on the Potential Buyers List, the Debtor will remain obligated to pay the Transaction Fee to the Firm.

15.     The Fee Arrangement shall be subject to the approval and adjustment by the Court in accordance with 11 U.S.C. § 330.

16.     The Debtor believes that the Fee Arrangement is reasonable and, therefore, should be approved by the Court.  The flexibility written into 11 U.S.C. § 328(a) encourages bankruptcy judges to approve compensation arrangements that reflect market conditions and to fashion arrangements suitable to the circumstances of individual cases. *In re Niover Bagels, Inc.*, 214 B.R. 291, 294 (Bankr. E.D.N.Y. 1997).  Here, the terms of the Fee Arrangement are reasonable and represent present market conditions.

17.     Through this Application, the Debtor seeks approval of the payment of the Fee Arrangement.  The Firm understands that, however, irrespective of whether such request is

approved by the Court at this time, the Firm is required to follow the procedures for final allowance of fees at the end of the bankruptcy case, or the conclusion of its representation of the bankruptcy estate, under § 330 of the Bankruptcy Code.

18.     The Firm has agreed to accept as compensation on a final basis such sums as may be allowed by the Court on the basis of the necessity of services rendered to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in this case.

## DISINTERESTEDNESS OF PROFESSIONALS

19.     Based on the Affidavit of James W. Fox, which is attached hereto as **EXHIBIT "B,"** the Debtor believes that the Firm does not hold or represent an interest adverse to the Debtor or the bankruptcy estate.

20.     The Debtor believes that the Firm is a "disinterested person" as defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b), and that the Firm does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

21.     The Debtor does not believe that the Firm holds a pre-petition claim against the Debtor and to the extent the Firm does, the Firm waives any such claim.

22.     Accordingly, the Debtor requests authority to pay the Firm the Fee Arrangement upon this Court's approval of same, and that the Court waive the requirement of the Firm to file a fee application.

**WHEREFORE,** based on the foregoing, the Debtor respectfully requests that the Court enter an Order: (a) approving this Application; (b) authorizing the Debtor to retain and employ

the Firm as Debtor's exclusive investment banker in this case; and (c) granting such other and further relief as the Court deems just and appropriate.

**DEBTOR IN POSSESSION:**

**D'ARCY ACQUISITION, LLC**

By: _____

R.J. Sandback, President

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic notices in this case on the 4th day of April, 2013.

_____/s/ Philip J. Landau_____
Philip J. Landau

# Exhibit A



**GLASSRATNER**

Date:     April 10, 2012

To:       Mr. R. J. Sandbach
          President
          D'ARCY ACQUISITION, LLC
          2015 SW 2nd Street
          Pompano Beach, FL 33069

From:     James W. Fox

Re:       **D'Arcy Acquisition, LLC – Investment Banker**

---

### 1. <u>Introduction</u>

This agreement ("Agreement") is between D'Arcy Acquisition, LLC ("D'Arcy", the "Company", or the "Debtor") as debtor in its Chapter 11 proceedings pending in the U.S. Bankruptcy Court, Southern District of Florida (Fort Lauderdale Division), Bankruptcy No. 13-12018-RBR and GlassRatner Advisory & Capital Group, LLC ("GlassRatner") regarding the retention of GlassRatner as exclusive Investment Banker ("IB") to D'Arcy. In this role, GlassRatner will focus on managing a process leading to the sale of the Debtor's assets. This Agreement outlines the proposed scope of services and the associated fee structure. This Agreement shall be subject to approval upon application for retention of GlassRatner as FA to the Debtor by the U.S. Bankruptcy Court for the Southern District of Florida (Fort Lauderdale Division).

### 2. <u>Scope of Work</u>

In its role as IB to the Debtor, GlassRatner will provide the following services to the Debtor:

      a.  Reviewing and developing initial marketing materials, to include an executive summary outlining the operational and financial highlights of the Debtor's business and assets and a form of Confidentiality Agreement ("CA") to be distributed to potential interested parties;

      b.  Identifying and approaching potential interested parties;

      c.  Coordinating negotiation and execution of CA's;

      d.  Distributing the executive summary to potential interested parties that execute a CA in a form and substance acceptable to the Debtor, the Debtor's counsel, and the Firm;

      e.  Introducing potential buyers to the Debtor and facilitating meetings and presentations;

      f.  Evaluating all indications of interest or proposals received from potential buyers;

      g.  Coordinating with Debtor staff due diligence requests from potential buyers; and

1741/000/00180599}

ATLANTA | CHICAGO | IRVINE | MIAMI | NEW YORK | TAMPA
424 Madison Avenue, Suite 510 | New York, NY 10017 | Tel: 212-223-2430 | Fax: 212-223-4654 | www.glassratner.com

h.  Assisting the Debtor and its Counsel in consummating the asset sale transaction with the purchaser ultimately selected.

### 3.  Engagement Leadership

James W. Fox will lead and direct the engagement and will utilize other members of the GlassRatner professional staff, as needed.

### 4.  Fee Arrangement

In connection with the professional services to be rendered to the Debtor, the Debtor shall pay the Firm upon the successful closing of a Transaction through a § 363 sale with any party a Transaction Fee equal to 4.5% of the Transaction Price.  The Transaction Fee shall be paid upon closing, by certified check or wire transfer.  For purposes of the Agreement, the "Transaction Price" shall be the aggregate consideration in connection with a Transaction, including without limitation the sum of the following:

a.  Cash and cash equivalents paid by the purchaser; plus

b.  Market value of any common or preferred stock, or promissory notes issued by either the Debtor or the purchaser; plus

c.  The value of any notes or other evidence of indebtedness of the Debtor, which is issued, assumed and/or forgiven in connection with a transaction.

Additionally, the foregoing is subject to a minimum Transaction Fee of $45,000, as well as the reimbursement of out of pocket costs.  Notwithstanding the foregoing: a) in the event that the Debtor's DIP Lender, or any of its affiliates, is the purchaser, the Firm shall not be entitled to payment of a Transaction Fee on any amount of indebtedness of the Debtor that is assumed by the DIP Lender or any amount that is credit bid by the DIP Lender.  In the event the sale process ends with the DIP Lender, or any of its affiliates, becoming the purchaser solely on a credit bid and/or assumption of debt basis, the Firm shall be entitled to a Transaction Fee of $22,500; and b) in the event of a Transaction with (i) Bentley Laboratories, LLC, (ii) Summit Private Capital Group, and/or (iii) any entities directly or indirectly controlled by Howard Sherman, GlassRatner's Transaction Fee shall be reduced by 10%.

### 5.  Engagement Term and Termination

This Agreement will remain in force for nine months from the date of the signing of this Agreement, after which it may be terminated immediately by either party, in its sole discretion, for any reason whatsoever.  Upon termination of this Agreement, GlassRatner shall be entitled to all unpaid expenses incurred pursuant to this Agreement, as well as the remaining unpaid balance of any fees earned but not paid.  Within two weeks of any termination, GlassRatner will provide the Debtor with a listing of all potential buyers with whom contact was made by GlassRatner and/or the Company during the term of the Agreement ("Potential Buyers List").  In the event that the Company consummates a Transaction within nine months of termination, with a party included on the Potential Buyers List, the Company will remain obligated to pay the Transaction Fee to GlassRatner. GlassRatner's right to indemnification under the below paragraph shall survive any termination.

6. <u>Indemnification</u>

The Company agrees to indemnify and hold harmless GlassRatner (including any employees or affiliated persons) from and against all claims, liabilities, losses and damages arising out of our services performed upon the Company's behalf except to the extent caused by gross negligence or willful misconduct by us.  Further, the Company agrees to reimburse GlassRatner for any legal or other expenses reasonably incurred by us in connection with the defense of such claims; provided, however, that they shall be excluded from such indemnification and reimbursement of any such loss, damage, liability, claim or expense which arises out of or is based upon any action or failure to act by GlassRatner pursuant to this Agreement or which constitutes gross negligence or willful misconduct under this agreement on the part of GlassRatner.  Such indemnification shall survive the completion of the engagement.

7. <u>Confidentiality</u>

GlassRatner agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any information relating to the project to be performed hereunder, provided that such disclosure may be made (a) to any person who is an officer, director or employee of GlassRatner solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior written consent of the Company, or (c) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official.  In the event that GlassRatner shall receive a request to disclose any of the terms of this Agreement under a subpoena or order, GlassRatner shall (i) promptly notify the Company, (ii) consult with the Company on the advisability of taking steps to resist or narrow such request and (iii) if disclosure is required or deemed advisable, cooperate with the Company in any attempt it may make to obtain an order or other assurance that confidential treatment will be accorded those terms of this Agreement that are disclosed.

8. <u>Governing Law; Dispute Resolution</u>

The laws of the State of Florida shall govern this Agreement and any controversy arising under it.  Any disputes arising hereunder shall be resolved by binding arbitration.  The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy, and in any appellate proceedings as well.

9. <u>Conclusion</u>

We look forward to working with you on this matter.  All correspondence should be directed to:

James W. Fox
GlassRatner Advisory & Capital Group, LLC
One Grand Central Place
60 East 42nd Street, Suite 2200
New York, NY
(212) 223 2430 x11
jfox@glassratner.com

If you agree with the terms of this agreement, please sign and return one copy to us.

Sincerely,

*James W. Fox*

James W. Fox
Principal

D'ARCY ACQUISITION, LLC

_____     _____
Signature                           Date

_____
Printed Name of Person Authorized to Sign

If you agree with the terms of this agreement, please sign and return one copy to us.

Sincerely,


James W. Fox
Principal


D'ARCY ACQUISITION, LLC

_____     ___4 | 4 | 2013___
Signature                   Date

___R. J. Sandbach_____
Printed Name of Person Authorized to Sign

# Exhibit
# B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

D'ARCY ACQUISITION, LLC,             Case No:  13-12018-RBR
d/b/a D'ARCY LABORATORIES, LLC,

      Debtor.                           Chapter 11

_____/

## AFFIDAVIT OF JAMES W. FOX

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, James W. Fox, being duly sworn, deposes and says:

1.      I am a Principal with GlassRatner Advisory & Capital Group, LLC (the "Firm") located at One Grand Central Place, 60 East 42nd Street, Suite 2200, New York, NY 10165

2.      I make this Affidavit (this "Affidavit") pursuant to Sections 327 and 328 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") in support of D'Arcy Acquisition, LLC d/b/a D'Arcy Laboratories, LLC's (the "Debtor") *Emergency Application for Approval of Employment of GlassRatner Advisory & Capital Group, LLC as Exclusive Investment Banker to the Debtor Nunc Pro Tunc to March 26, 2013* (the "Application").  The facts set forth in this Affidavit are personally known to me and, if called upon as a witness, I could and would testify thereto.

## SELECTION OF THE FIRM AS EXCLUSIVE INVESTMENT BANKER

3.      The Firm has been selected—*nunc pro tunc* to March 26, 2013—as the exclusive investment banker to the Debtor for the purpose of managing a process leading to the sale of substantially all of the Assets.[1]

4.      The Firm is a national organization that provides merger & acquisition ("M & A") and other bankruptcy/restructuring advisory services to companies that are experiencing financial difficulty.  The Firm's professionals have been retained as financial advisors in a number of troubled company situations and have years of experience involving, *inter alia*, all types of transactions, including asset sales and financings, both in a bankruptcy setting and out-of-court. .

## SERVICES TO BE RENDERED

5.      As set forth in the Application, and as further supplemented herein, the Debtor seeks authorization to retain the Firm *nunc pro tunc* to March 26, 2013 as the exclusive investment banker for the Debtor for the purpose of managing a process leading to the sale of substantially all of the Assets.

6.      Subject to bankruptcy court approval of the Agreement, the Firm will assist and advise the Debtor with the following:

a.   Reviewing and developing initial marketing materials, to include an executive summary outlining the operational and financial highlights of the Debtor's business and assets and a form of Confidentiality Agreement ("CA") to be distributed to potential interested parties;

b.   Identifying and approaching potential interested parties;

c.   Coordinating negotiation and execution of CA's;

d.   Distributing the executive summary to potential interested parties that execute a CA in a form and substance acceptable to the Debtor, the Debtor's counsel, and the Firm;

---

[1]      All capitalized terms shall have the meaning ascribed to them in the Application, unless otherwise noted herein.

e. Introducing potential buyers to the Debtor and facilitating meetings and presentations;

f. Evaluating all indications of interest or proposals received from potential buyers;

g. Coordinating with Debtor staff due diligence requests from potential buyers; and

h. Assisting the Debtor and its Counsel in consummating the asset sale transaction with the purchaser ultimately selected.

7.    Subject to this Court's approval of the Application, the Firm is willing to serve as the Debtor's investment banker and to perform the services described above. Based upon the experience and expertise of Firm and my analysis and experience with the Debtor's assets, I believe that the Firm is well qualified to represent the Debtor.

## DISINTERESTEDNESS OF PROFESSIONALS

8.    To the best of my knowledge, the Firm is a disinterested person and does not hold, or represent any entity holding any interest adverse to the bankruptcy estate or the Debtor and is not a creditor of the Debtor's estate.

9.    The Debtor believes that the Firm is a "disinterested person" as defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b) and that the Firm does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders. To the best of my knowledge and belief, the Firm, its members, officers and employees:

a. Are not or were not an investment banker for any outstanding security of the Debtor; and

b. Do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or an investment banker of the Debtor, or for any other reason.

10.    To the best of my knowledge, the Debtor is not aware of any claims that the Debtor

or Debtor's estate has against a client of the Firm.  If the Firm should come into possession of any such information that would suggest the existence of a potential claim against a Firm client, the Firm will advise the Debtor of such information.

11.    To the best of my knowledge, the Firm has no other connection with the Debtor, its creditors, any other party in interest in this Chapter 11 case, or their respective attorneys or accountants.

12.    To the best of my knowledge, the Firm has not provided, and will not provide, any professional services to any creditor or other interested parties with respect to any matter related to the Debtor, the Debtor's estate or this Chapter 11 case.

13.    Accordingly, the Firm has not tried to obtain, and does not at this time intend to try to obtain, conflict waivers from any creditors of the Debtor or other interested parties, whom the Firm currently represents on matters unrelated to the Debtor or its chapter 11 case.  To the extent a waiver is obtained, the Firm will file a supplemental disclosure with the Court.

14.    To the best of my knowledge, no director, officers or employee of the Firm is related to any United States District Court Judge or United States Bankruptcy Court Judge in this District or to the United States Trustee for such District or any employee of the office thereof.

15.    In the event that the information disclosed herein requires modification, or additional information becomes available to the Firm with respect to any other significant relationship, connection or conflict which may exist between the Firm, its directors, officers and employees and the Debtor, a creditor or other party in interest or potentially adverse party, which may affect this bankruptcy case, the Firm will file a supplemental disclosure with the Court, and serve that supplemental disclosure on the United States Trustee and all creditors of the Debtor's estate.

16.    Based upon the foregoing, the Firm believes that it may act as exclusive investment banker for the Debtor pursuant to Sections 327 and 328 of the Bankruptcy Code.

## PROFESSIONAL COMPENSATION

17.    The Firm has not received any advance fee or retainer for post-petition services.

18.    In connection with the professional services to be rendered to the Debtor, the Debtor shall pay the Firm upon the successful closing of a § 363 sale a fee (the "Transaction Fee") equal to four and one half percent (4.5%) of the sale price (the "Transaction Price"), subject to a minimum Transaction Fee of $45,000; provided, however, that (a) if the Debtor's post-petition lender, Oak Lane Partners, LLC ("OLP"), or any affiliates of OLP, close the sale, the Firm shall be limited to a transaction fee of $22,500.00; and (b) if third parties (i) Bentley Laboratories, LLC, (ii) Summit Private Capital Group, and/or (iii) any entities directly or indirectly controlled by Howard Sherman, close the sale, the transaction fee paid to the Firm shall be reduced by ten percent (10%) (collectively, the "Fee Arrangement").

19.    The Transaction Fee shall be paid at closing, by certified check or wire transfer. For purposes of the Agreement, the Transaction Price shall be the aggregate consideration in connection with a Transaction, including without limitation the sum of the following:

      a.    Cash and cash equivalents paid by the purchaser; plus

      b.    The market value of any common or preferred stock, or promissory notes issued by either the Debtor or the purchaser; plus

      c.    The value of any notes or other evidence of indebtedness of the Debtor, which is issued, assumed and/or forgiven in connection with a transaction.

20.    If approved by this Court, the Agreement will remain in force for nine months from the date of the signing of the Agreement, after which it may be terminated immediately by either party, in its sole discretion, for any reason whatsoever. Upon termination of the Agreement, the Firm shall be entitled to all unpaid expenses incurred pursuant to the Agreement. Within two weeks of any termination, the Firm shall provide the Debtor with a listing of all potential buyers with

whom contact was made by the Firm and/or the Debtor during the term of the Agreement (the "Potential Buyers List.")  In the event the Debtor consummates a transaction within nine months of termination, with a party included on the Potential Buyers List, the Debtor will remain obligated to pay the Transaction Fee to the Firm.

2.      The Fee Arrangement shall be subject to the approval and adjustment by the Court in accordance with 11 U.S.C. § 330.

3.      The Debtor believes that the Fee Arrangement is reasonable and, therefore, should be approved by the Court.  The flexibility written into 11 U.S.C. § 328(a) encourages bankruptcy judges to approve compensation arrangements that reflect market conditions and to fashion arrangements suitable to the circumstances of individual cases. *In re Niover Bagels, Inc.*, 214 B.R. 291, 294 (Bankr. E.D.N.Y. 1997).  Here, the terms of the Fee Arrangement are reasonable and represent present market conditions.

4.      Through this Application, the Debtor seeks approval of the payment of the Fee Arrangement.   The Firm understands that, however, irrespective of whether such request is approved by the Court at this time, the Firm is required to follow the procedures for final allowance of fees at the end of the bankruptcy case, or the conclusion of its representation of the bankruptcy estate, under § 330 of the Bankruptcy Code.

21.     The Firm has agreed to accept as compensation on a final basis such sums as may be allowed by the Court on the basis of the necessity of services rendered to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in this case.

22.     Other than as set forth above, no arrangement is proposed between the Debtor, any creditor or other party-in-interest and the Firm for compensation to be paid in this case.

23.    Except for arrangements among the members of the Firm, the Firm has no agreement with any other entity to share any compensation received, nor will any sharing be made, except as permitted under Section 504(b)(1) of the Bankruptcy Code.

**FURTHER AFFIANT SAYETH NAUGHT.**

_James W. Fox_

James W. Fox

SWORN TO AND SUBSCRIBED before me this _4th_ day of April, 2013 by **James W. Fox,** who is known to me, or who produced _Driver's License_ as identification.

_Hella Westerfeld_

NOTARY PUBLIC
STATE OF NEW YORK

HELLA L. WESTERFELD
Notary Public - State of New York
No. 01WE6253105
Qualified in Queens County
My Commission Expires Dec. 19, 2015

Print Name:_____

Commission No._____

My Commission Expires:_____